# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 23012**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Adam S. KELNHOFER**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 November 2024[1]

————————————

*Military Judge*: Colin P. Eichenberger.

*Sentence*: Sentence adjudged on 14 December 2022 by SpCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 20 January 2023: Confinement for 6 months, forfeiture of $1,190.00 pay per month for 6 months, and reduction to E-1.

*For Appellant*: Major David L. Bosner, USAF; Captain Trevor N. Ward, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Morgan R. Christie, USAF; Major Jocelyn Q. Wright, USAF; Captain Morgan L. Brewington, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge RICHARDSON joined.

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

ANNEXSTAD, Senior Judge:

A special court-martial consisting of officer members found Appellant guilty, contrary to his pleas, of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2] The military judge sentenced Appellant to confinement for six months, forfeiture of $1,190.00 pay per month for six months, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal which we have rephrased: (1) whether Appellant's conviction is legally sufficient, (2) whether Appellant's conviction is factually sufficient, and (3) whether Appellant's sentence is inappropriately severe. We address issues (1) and (2) together.

We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant enlisted in the Air Force on 15 July 2003, and at the time of his court-martial had served continuously for 19 years and 1 month. At the time of the offense, Appellant worked in aircraft maintenance as a supply section chief, and was stationed at Nellis Air Force Base (AFB), Nevada. According to his most recent performance report, Appellant supervised 29 junior Airmen and 22 vital programs.

On 8 June 2022, Appellant was randomly selected to provide a sample of his urine. In accordance with Drug Demand Reduction Program (DDRP) procedures, Appellant provided his urine sample under the observation and direction of a trained drug testing observer. The sample was then packaged, processed, and shipped to the Air Force Drug Testing Lab (AFDTL) at Joint Base San Antonio–Lackland (JBSA–Lackland), Texas, for analysis. The report from that analysis indicated Appellant's urine sample was positive for cocaine at a

———————————

[2] Unless otherwise noted all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

level of 116 nanograms per milliliter (ng/mL), 16 ng/mL above the Department of Defense cutoff level of 100 ng/mL.

As a result, Appellant was charged with one specification alleging wrongful use of cocaine. During Appellant's court-martial the Government presented both documentary and testimonial evidence. Specifically, the Government introduced all paperwork concerning the collection of Appellant's urine sample and the AFDTL report associated with Appellant's urinalysis. The Government also presented testimony from three witnesses who were involved with the collection and processing of the urine sample. These witnesses included Mr. CM, the Nellis AFB DDRP manager; Technical Sergeant (TSgt) FJ, the observer who witnessed the collection of Appellant's urine sample; and Dr. JW, a forensic toxicology expert.

Mr. CM testified generally about the processes for random selection, notification of selection, sample collection, processing, packaging, and shipping for lab analysis. Mr. CM also testified about the selection of drug testing observers and their requisite qualifications and training. TSgt FJ testified about the collection of Appellant's urine sample. TSgt FJ confirmed that he was aware of the procedures he should follow if he should witness anything out of the ordinary during a sample collection, but did not note anything concerning about Appellant's conduct during sample collection. Finally, TSgt FJ stated he was "100% sure" that Appellant did not put anything other than his own urine in the specimen container.

The Government's final witness was Dr. JW, an expert in the field of forensic toxicology. Dr. JW testified that he was employed by the Armed Forces Medical Examiner System (AFMES) which is responsible for overseeing the DDRP and all associated drug testing laboratories. He confirmed that his office oversees and inspects the AFDTL at JBSA–Lackland and added that he had recently visited the JBSA–Lackland facility for an inspection. Concerning the most recent inspection of the AFDTL at JBSA–Lackland, Dr. JW indicated that the lab had done "very well," and he was satisfied with its performance.

Next, Dr. JW was presented a copy of the AFDTL report for Appellant's urine sample which he explained in detail for the members. First, he pointed to how the samples are identified by the lab, how they should look when they arrive for analysis, and where notations should be made should any samples appear to contain a "discrepancy." He then discussed the process for testing a sample once it is ready to be analyzed, beginning with the initial screening and then confirmation testing if any metabolite-positive samples were flagged. He then explained that after confirming the presence and identification of a particular substance, the sample then undergoes "mass spectrometry," which is the second type of test used in forensic urinalysis. This second type of testing allows the lab, once they know which specific metabolite they are looking for,

to obtain more precise details concerning the compound detected, including the approximate levels present. Dr JW stated that no discrepancies were noted concerning Appellant's sample received by the lab, that the lab equipment used was clean and functioning properly, and that the sample was analyzed correctly.

Concerning cocaine, Dr. JW explained that the specific metabolite the lab would be looking for is benzoylecgonine (BZE). He clarified that BZE is only present in the body when a person's body has processed cocaine. Dr. JW confirmed that Appellant's BZE level was measured at 116.41 ng/mL. Dr. JW then explained "cutoff level." Dr. JW explained that the cutoff can help protect against individuals testing positive after passive or accidental ingestion. Dr. JW clarified that a person must have had "direct exposure" or "direct involvement" to ingest enough cocaine to test above the administrative cutoff. Additionally, Dr. JW testified that cocaine is not a substance that can enter the body through the skin; it must be directly inhaled or consumed, which could occur by eating, drinking, snorting, or smoking cocaine. Dr. JW opined that the specific level of 116 ng/mL did not give him any pause about whether Appellant used the drug. Indeed, Dr. JW went so far as to opine that, "scientifically, this [urinalysis] was done very well, and I believe in the result." Dr. JW also reiterated several times during his testimony that the testing process was extremely thorough to eliminate error and ensure the highest accuracy of the test results.

Dr. JW stated he could not extrapolate the amount of cocaine ingested at the time it was introduced to the body, the number of uses, or the amount of time that had passed since the last use. Rather, he could only confirm the presence of the compound in the urine sample and the estimated level at the time it was tested, adding when a person tests positive, "we know that there's [been] a direct exposure." Dr. JW never departed from his position that any small amount of cocaine ingested accidentally would not produce a positive urinalysis result for cocaine at a level above the 100 ng/mL cutoff.

In its case-in-chief, the Defense presented the testimony of Mr. CO. Mr. CO was a friend of Appellant's brother and had met Appellant for the first and only time in Richmond, Virginia, the weekend of 4 June 2022. He testified he and Appellant were in Richmond for Appellant's brother's wedding. Mr. CO confirmed that he had spent a substantial amount of time with Appellant throughout the weekend and did not notice Appellant using cocaine or manifesting any physical clues that he had used the drug. Mr. CO acknowledged that he was not with Appellant continuously for the entire weekend.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his conviction.

#### 1. Law

We review issues of legal sufficiency de novo. *United States v. Harrington,* 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King,* 78 M.J. 218, 221 (C.A.A.F. 2019)). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). "The [G]overnment is free to meet its burden of proof with circumstantial evidence." *Id.* (citations omitted). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017), (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, ___ M.J.___, No. 23-0210, 2024 CAAF LEXIS 590, at *9 (C.A.A.F. 7 Oct. 2024) (internal quotation marks and citation omitted).

The National Defense Authorization Act for Fiscal Year 2021 significantly changed how Courts of Criminal Appeals (CCAs) conduct factual sufficiency reviews. Pub. L. No. 116-283, § 542(b)(1)(B), 134 Stat. 3388, 3612 (1 Jan. 2021). Previously, the test for factual sufficiency required the court, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, to be convinced of the appellant's guilt beyond a reasonable doubt before it could affirm a finding. *See United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). "In conducting this unique appellate role, we [took] 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (second alteration in original) (quoting *Washington,* 57 M.J. at 399) (applying the version of Article

66(c), UCMJ, in effect prior to 2019); *see also United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *Wheeler* and applying the same factual sufficiency test in the context of Article 66(d), UCMJ, effective 1 January 2019).

The current version of Article 66(d)(1)(B), UCMJ, FACTUAL SUFFICIENCY REVIEW, states:

> (i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

> (ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B).

"[T]he requirement of 'appropriate deference' when a CCA 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *United States v. Harvey*, ___ M.J.___, No. 23-0239, 2024 CAAF LEXIS 502, at *8 (C.A.A.F. 6 Sep. 2024) (second and third alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.*

"[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at *10 (internal quotation marks omitted).

In order for this court "to be 'clearly convinced that the finding of guilty was against the weight of the evidence,' two requirements must be met." *Id.* at *12. First, we must decide that evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id.* Second, we "must be clearly convinced of the correctness of this decision." *Id.*

To find Appellant guilty of a violation of Article 112a, UCMJ, as charged, the Government was required to prove, beyond a reasonable doubt, that Appellant used cocaine, and such use was wrongful. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 50.b.(2).

> "Use" means to inject, ingest, inhale, or otherwise introduce into the human body, any controlled substance. Knowledge of the presence of the controlled substance is a required component of use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the [G]overnment's burden of proof as to knowledge.

*MCM*, pt. IV, ¶ 50.c.(10). "A urinalysis properly admitted under the standards applicable to scientific evidence, when accompanied by expert testimony providing the interpretation required by [*United States v. Murphy*, 23 M.J. 310, 312 (C.M.A. 1987)], provides a legally sufficient basis upon which to draw the permissive inference of knowing, wrongful use . . . ." *United States v. Green*, 55 M.J. 76, 81 (C.A.A.F. 2001) (citing *United States v. Bond*, 46 M.J. 86, 89 (C.A.A.F. 1997)); *see also United States v. Ford*, 23 M.J. 331, 337 (C.M.A. 1987) (noting the permissive inference has existed in the military justice system since 1955 and has found "longstanding and consistent judicial approval" in the military and civilian courts (citation omitted)).

### 2. Analysis

Appellant makes two arguments on appeal. First, Appellant argues that use of the permissive inference violates his due process rights. Second, he argues that the Government failed to prove he knowingly ingested cocaine, insofar as the Government's evidence of Appellant's use solely consisted of positive urinalysis results. Specifically, Appellant argues that the testimony from Dr. JW was insufficient to provide a rational basis upon which the factfinder could draw an inference that Appellant knowingly used cocaine. We disagree with both of Appellant's contentions.

Addressing Appellant's first contention, the Due Process Clause of the Fifth Amendment[3] "requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011) (emphasis omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The United States Supreme Court has described this burden as "vital" and "indispensable," *In re Winship*, 397 U.S. 358, 363–64 (1970), and as one "our system of criminal

---

[3] U.S. CONST. amend. V.

justice deems essential," *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975). This is due to the fact an accused facing prosecution "has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *In re Winship*, 397 U.S. at 363.

That said, it is well-established law that permissive inferences do not impermissibly shift the burden of proof, so long as they "leave[ ] the trier of fact free to credit or reject the inference" and there is some "rational way the trier could make the connection permitted by the inference." *Ulster County Court v. Allen*, 442 U.S. 140, 157 (1979). A permissive inference violates due process "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the [factfinder]." *Francis v. Franklin*, 471 U.S. 307, 314–15 (1985) (citation omitted). Here the factfinder was free to credit or reject the inference that Appellant's use was knowing. Additionally, as we stated *supra*, the evidence in this case provides a sufficient basis—scientific testing accompanied by expert testimony providing the required interpretation—for the trier-of-fact to find that Appellant knowingly and wrongfully used cocaine.

As to Appellant's second contention that the Government failed to prove he knowingly ingested cocaine, we find that the Government's evidence, as explained by Dr. JW, established that Appellant's urine tested positive for the cocaine metabolite BZE at a concentration of 116 ng/mL. The evidence indicated no apparent flaws in the chain of custody or testing of the sample. The BZE concentration was higher than the 100 ng/mL cutoff level created to exclude individuals who were passively exposed to cocaine. Here, the panel of officer members, as triers-of-fact, could reasonably apply the permissive inference explained *supra* and in *Green* to find the urinalysis result proved Appellant knowingly and wrongfully used cocaine beyond a reasonable doubt.

We recognize that on cross-examination, Dr. JW agreed that the test result itself did not prove how the cocaine metabolite BZE came to be present in Appellant's urine, that studies indicate cocaine is transferable between humans in multiple ways, and that it was generally possible to contaminate urine samples. However, proof beyond a reasonable doubt does not require proof that overcomes every *possible* doubt. *See United States v. McClour*, 76 M.J. 23, 24 (C.A.A.F. 2017) (citation omitted). It is enough that the evidence firmly convinces the trier-of-fact of the accused's guilt. *See id*. The panel of officer members could reasonably conclude none of the points raised by trial defense counsel or hypothetical sources of innocent ingestion or contamination, under the circumstances of this case, raised a reasonable doubt that would dissuade them from applying the permissive inference that BZE was present in Appellant's

urine at a concentration of 116 ng/mL because Appellant knowingly and wrongfully used cocaine.

Having given full consideration to Appellant's arguments and drawing every reasonable inference from the evidence in favor of the Government, we conclude the evidence is legally sufficient to support Appellant's conviction. Additionally, for the same reasons, after giving the appropriate deference to the factfinder, we are not clearly convinced the findings of guilty were against the weight of the evidence. *Harvey*, 2024 CAAF LEXIS 502, at *12.

## B. Sentence Appropriateness

Appellant contends that his sentence—reduction in grade from E-7 to E-1 and six months' confinement—was inappropriately severe. Specifically, Appellant argues his lengthy service record, to include eight combat deployments, and a dearth of aggravating evidence merited a less severe punishment. We disagree and find no relief warranted.

### 1. Additional Background

Appellant elected to be sentenced by the military judge. During the presentencing portion of his court-martial, the Government offered a personal data sheet consisting of Appellant's service-related data and all of Appellant's performance reports. The performance reports indicated Appellant's military service was above average for the vast majority of his career, and that he had deployed eight times to include service in combat zones. In fact, the only negative aspect of Appellant's service record was a referral performance report from 2009 where Appellant was alleged to have engaged in drunk and disorderly behavior. During the presentencing phase, Appellant's counsel offered three exhibits which were admitted, including a two-page written unsworn statement from Appellant, four pages of photographs of Appellant's awards and mementos from his military career, and five pages containing personal photographs of Appellant and his family. No witnesses testified and no character statements were offered.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of a sentence as we find correct in law and fact. Article 66(b), UCMJ, 10 U.S.C. § 866(b). In reviewing judge-alone sentencing, we "must consider the appropriateness of each segment of a . . . sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024). We consider each "particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Although a

CCA is empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

**3. Analysis**

Appellant asks that we reduce his sentence by disapproving the reduction in grade to E-1 or, in the alternative, only approve a reduction to the grade of E-5. We are not persuaded that his sentence, to include reduction to the grade of E-1, is inappropriately severe.

We begin our analysis by noting that Appellant was a senior noncommissioned officer who had served for over 19 years. At the time of his criminal behavior, by virtue of his rank, Appellant was serving in a position to lead and set a positive example for junior Airmen. Appellant certainly knew or should have known the consequences of illegal drug use. We also note that the military judge in this case did not adjudge the maximum punishment authorized, which in this case included a punitive discharge. Our review of the record and Appellant's arguments establish that Appellant has not raised any new evidence or argument other than what was considered by the military judge at trial or the convening authority during clemency. Generally, Appellant's recitation of prior arguments simply amounts to another attempt at clemency which is not an authorized function of this court. *See Guinn*, 81 M.J. at 203.

Having considered the nature and seriousness of Appellant's misconduct, and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his written unsworn statement, we conclude the sentence of confinement for six months, forfeiture of $1,190.00 pay per month for six months, and reduction to the grade of E-1 appropriately punishes Appellant for his misconduct. Therefore, the sentence as entered is not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.


FOR THE COURT

CAROL K. JOYCE
Clerk of the Court